204 So.2d 497

**Oscar C. DEARMON**

v.

**C. L. GUILD CONSTRUCTION COMPANY, Inc.**

**I Div. 174.**

Court of Appeals of Alabama.

Nov. 21, 1967.

Inge, Twitty, Duffy & Prince, Mobile, for appellee.

Kilborn, Darby & Kilborn, Mobile, for appellant.

PRICE, Presiding Judge.

This proceeding is certiorari by the employee to review the finding of facts and judgment of the trial court under the Workmen's Compensation Act, Title 26, Section 253 et seq., Code 1940, as amended.

The court found that the employee, Dearmon, on November 13, 1961, while engaged in his regular employment as a heavy-truck driver and while mounting a tire and rim on a truck owned by defendant, sustained an injury as "a proximate result of an accident arising out of and in the course of his employment with the defendant. The

plaintiff was injured when the tire with which he was working exploded and portions of the tire and/or rim struck the plaintiff on the left hand and the left leg and hip area."

"As a result of said accident, the plaintiff suffered a compound fracture of the 4th and 5th metacarpal bones of the left hand, together with contusions and abrasions of the left hip and leg."

The court found the employee was temporarily totally disabled for 24 weeks (for which the defendant had paid compensation at the rate of $33.00 per week, or a total of $792.00) and that he sustained permanent partial disability to "the extent of 35% loss of the use of his left hand"; that he had a wife and that his average earnings were $130.00 per week. The defendant had already paid hospital, medical, and surgical bills.

The court awarded appellant, for his permanent partial disability, a total amount of $940.50, to be paid at the rate of $33.00 per week for a period of 28.5 weeks, in addition to the 24 weeks theretofore paid by defendant to plaintiff as temporary total disability.

The insistence in brief is that the trial court erred in (1) "not finding that Oscar Dearmon suffered other injuries than that to his hand when the uncontroverted evidence showed that he had in fact suffered such injuries; and (2) that the trial court erred in granting compensation under Code of Alabama, Title 26, Section 279(C) (1), (3) instead of Title 26, Section 279(C) (6)."

The pertinent part of Section 279(C) (1), (3) provides:

"(C) 1. Permanent Partial Disability.
"For permanent partial disability the compensation shall be based upon the extent of such disability. In cases included in the following schedule the compensation shall be fifty-five percent of the average weekly earnings, during the number of weeks set out in the following schedule:

\* \* \* \* \* \*
"For the loss of a hand, one hundred seventy weeks.

\* \* \* \* \* \*
"3. Loss of use of a member.

"In all cases the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member but in such cases the compensation in and by such schedule shall be in lieu of all other compensation. In case of permanent disability, due to injury to a member resulting in less than total loss of use of such member, not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of the injury to the member bears to its total loss."

Subdivision 6 of Section 279(C), Title 26, Code, supra, reads:

"6. All other permanent partial.

"In all other cases of permanent partial disability not above enumerated, the compensation shall be fifty-five per cent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition subject to the same maximum weekly compensation as stated in section 289 of this title."

This subsection has been termed as a "sort of catch-all to cover those cases which otherwise might be omitted, and by its terms applies only to those cases not before enumerated." Swift & Co. v. Rolling, 252 Ala. 536, 42 So.2d 6; Chiovitte v. Zenith Furnace Co., 148 Minn. 277, 181 N.W. 643.

It is petitioner's contention in brief that the evidence shows that there was permanent disability to his thigh, which does not come under Title 26, Section 279(C) (1), (3), covering partial loss of a scheduled member, and that, where there are permanent injuries to more than one part of the body, some of which are covered

under the schedule of injuries and some of which are not, and there has been a loss of earning capacity, compensation is to be awarded in accordance with the provisions of Section 279(C) (6), citing and relying principally upon the case of Daniels Construction Company v. Phillips, 241 Ala. 537, 3 So.2d 304.

The evidence before the court concerning plaintiff's injuries is as follows:

Plaintiff introduced the report of Dr. King, an orthopedic surgeon, who examined plaintiff at defendant's request. Dr. King's report of May 31, 1962, is as follows:

"CHIEF COMPLAINT—Disability of left hand and left leg.

"HISTORY—The patient stated that while working on November 13, 1961, a steel rim blew off a trailer tire and struck his left arm and left leg. He stated he was working at the Mobile Infirmary at the time for C. L. Guild Construction Company. He was admitted to the Mobile Infirmary, and was treated by Drs. Harris and Rutledge. He stated he had surgery to his hand; and the leg was badly bruised. He stated he was in the hospital approximately ten days. He stated he has not returned to work, but was discharged from treatment last week.

"PRESENT ILLNESS—The patient stated his hand, arm, left side and leg hurt all the time. He stated they are very painful when it is cloudy or rainy. He stated he cannot see as well now. He stated his left leg gets numb, and he can't walk very far. He stated his hand has no strength, it hurts, is tender, and he cannot use it very well. He stated he had fractures of two bones in his hand.

"EXAMINATION—Examination of the lft (sic) hand revealed a 5° loss of supination, at the wrist. There was a 30° loss of dorsi flexion, at the wrist.

There was a 5° loss of palmar flexion at the wrist. There was a slight loss of radial deviation. There is a healed scar on the dorsum of the hand, extending to the ulnar edge of the hand. He could oppose his thumb to all fingers except his fifth finger, which he cannot touch. There was loss of extension in all fingers of 30°, except the index finger, in which there is a loss of 20°. There was loss of motion at the interphalangeal and metacarpal phalangeal joints, so that he lacks approximately one and one-half inches of being able to touch the palm of his hand with the tip of his fingers. He has a glove type of anesthesia to the shoulder, although neurological examination was negative.

"Examination of the left lower extremity revealed he walked with a slight limp. there is one-half to three-quarters of an inch atrophy of the left thigh. There is no calf atrophy present. There was a negative Trendelenburg test. Neurological examination was negative.

"X-RAYS—Films #13415, AP and lateral, *left hand,* and AP, lateral and oblique, *left wrist,* taken in our office on May 14, 1962, revealed healed fractures of the fourth and fifth metacarpals, in satisfactory position. There is some osteoporosis of the bones of the hand and the wrist. No x-rays of the left leg were made.

"COMMENT—This patient as far as the leg is concerned, exhibited essentially no findings except for slight atrophy which, I feel, is probably that of disuse. I feel that probably with use, and possibly some exercises to his leg, the muscles will build back up, and leave him with no residual disability. He probably has 5% to 10% disability of the left leg, at this time, but this should clear up with use, leaving no residual disability.

"The left hand exhibits 30% to 35% disability, which probably is permanent.

However, it is my feeling, it would be worth while giving him some intensive physical therapy to the hand, which might reduce this disability. I doubt if he is able to drive and handle a big truck at this time, due to the hand disability."

Dr. King's report of October 19, 1965, concerning the leg injury, reads:

"The above named patient was again examined by the writer in our office on October 8, 1965, at your request.

"PRESENT ILLNESS—He still had the same complaints of disability with the left hand and left leg as when he was examined in May 1962 by me. However, he stated his left leg is paralyzed now. He had other multiple complaints, stating he had lost his right eye, and that he gets dizzy, nauseated and vomits.

"EXAMINATION * * *

"*Left Lower Extremity*—Examination revealed the patient walks with a slight left lower extremity limp. There was a negative, Trendelenburg test. He had a full range of knee, hip and ankle motion. There was no crepitation in any of the joints. Neurological examination was negative. There is no measurable atrophy of the calf or the thigh.

    *    *    *    *    *    *

"COMMENT—At this time I could find no disability in the left lower extremity from an objective standpoint. The left hand exhibited approximately 35% permanent partial disability."

The plaintiff testified he had been back in the hospital recently for treatment of his leg; that L. M. Brown's assistant took x-rays of his leg; that he has not been able to walk very well since the accident and on bad rainy days his leg is paralyzed and he is unable to move it; that for the past two years the leg has ached like a toothache. It would start hurting where he received the lick and the pain would "run up and down the leg like somebody scraping the bone"; that Drs. Harris and Rutledge treated him when he was hurt and then he was sent to Dr. King, a bone doctor, who examined him a couple of times; that he told Dr. King about his leg but the only thing Dr. King did was hit his knee with a hammer.

Prior to the accident he had followed construction work as a truck driver for twenty-six years, driving big trucks mostly. It was two years after the accident before he was able to return to work. He has not been able to drive big trucks since the accident and is not physically able to drive a big truck on account of the injury to his hand and leg; that he did not have the necessary grip in his hand for driving big trucks.

A stipulation as to plaintiff's employment history subsequent to the accident and the rates of pay for drivers of heavy equipment and for pickup trucks from the date of the injury, showing a 94 cents difference in the hourly rate of pay, was introduced in evidence and is set out in the record.

Plaintiff's witness, W. D. Brunson, testified he was in the hauling business and operated fifteen large trucks; that he had known plaintiff sixteen years and at one time they had operated big trucks for the same employer; that since the accident plaintiff had applied for a job with him. He needed a driver and plaintiff was very dependable and the kind of man he would like to have working for him, but he didn't hire him because "I just didn't feel like he was capable of driving the big trucks that I have." He reached this conclusion on account of "the condition of his hand for one thing. You just can't shift a truck with conditions like that." It is necessary to use one hand to shift and the other to hold the wheel. There are eight gears and "it's about 20 times that you shift when you split shift."

The burden rested upon the plaintiff to reasonably satisfy the trial court

that he had in fact sustained permanent injuries to his thigh or other parts of the body not covered in the schedule. Black v. Alabama Dry Dock & Shipbuilding Co., 249 Ala. 209, 30 So.2d 456; Simpson v. Alabama Dry Dock & Shipbuilding Co., 269 Ala. 635, 114 So.2d 918; Alabama Textile Products v. Grantham, 263 Ala. 179, 82 So. 2d 204.

In Black v. Alabama Dry Dock & Shipbuilding Co., supra, the court said: "In a case of this kind the credibility of the testimony is a material issue before the trial court. Its findings of fact must of necessity be based upon the probabilities in the case, the natural and reasonable inferences to be drawn from the testimony, and especially the credence that should be given to the plaintiff's statements, since he offered no medical evidence in support of his claim."

The only medical evidence offered by the plaintiff in support of his claim was the reports of Dr. King, to whom he was sent for examination by defendant's insurer. In his last report, dated October 19, 1965, Dr. King states: "At this time I could find no disability in the left lower extremity from an objective standpoint." Plaintiff cites Dorland's Medical Dictionary, 23rd Edition, p. 935, for the definition of "objective" as "pertaining to things that are the objects of the external senses", and argues in brief that the effect of Dr. King's statement is that he could not perceive with his eyes, or the other four senses, disability to plaintiff's lower left extremity; that such was not testimony that there is no disability to the left lower extremity, especially since he stated in his report that Dearmon was still walking with a "slight left lower extremity limp", and that the testimony of plaintiff as to the disability to his leg stands uncontroverted.

 We are of opinion the evidence and the reasonable inferences therefrom support the findings of the trial court that the only permanent disability suffered by the plaintiff was the 35% loss of use of his left hand, and that the award was not governed by Section 279(C) (6), Title 26, Code, supra.

On certiorari to review judgments in compensation cases, this court will not look to the weight of the evidence as to any fact found by the trial court, but simply to see if there is any evidence to support facts found by the trial court, and this rule applies when the award or compensation is denied as well as where there has been a judgment favorable to plaintiff. Our review here on certiorari is confined to questions of law apparent upon the face of the record. Bass v. Cowikee Mills, 259 Ala. 391, 67 So.2d 12; Jackson v. W. L. Smith Poultry Co., 264 Ala. 184, 85 So.2d 893; Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 96 So.2d 159; City of Foley v. Terry, 278 Ala. 30, 175 So.2d 461.

As indicated above, there was evidence to support the conclusion reached by the trial court, and it follows that the judgment should be and is affirmed.

Affirmed.